UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - X

DUNKIN' DONUTS FRANCHISED RESTAURANTS
LLC, et al.,

                          Plaintiffs,     <u>ORDER</u>

            - against -          CV 2007-4027 (ENV)(MDG)

GRAND CENTRAL DONUTS, INC., et al.,

                          Defendants.

- - - - - - - - - - - - - - - - - - - - - X

GO, United States Magistrate Judge:

    Defendants, franchisees of plaintiffs Dunkin' Donuts Franchised Restaurants LLC ("Dunkin"), et al., and their shareholders, move to compel the production of documents and responses to interrogatories by three letter motions filed on May 14, 2009 (ct. docs. 62, 63, 64). While the Court ruled on some of the issues raised in defendants' motions at a conference held on May 29, 2009, other aspects of their motions are addressed in this order. <u>See</u> ct. doc. 69.

## BACKGROUND

    In 2002, plaintiffs Dunkin and Baskin-Robbins Franchised Shops LLC entered into a Store Development Agreement (the "SDA") with defendants Manav Enterprises, Inc. and Rajan Patiwana to develop Dunkin' Donuts and Baskin-Robbins franchise shops within designated geographic areas. From 2003 to 2005, defendants and

Dunkin entered into a series of five separate franchise agreements which are virtually identical. The franchise agreements outline the circumstances that trigger default and the termination process to be followed. Section 5.1.7 requires that the defendants comply with all applicable civil and criminal laws, rules and regulations, including those related to taxation. Among the circumstances that trigger default, "[i]f FRANCHISEE is convicted of or pleads guilty or 'nolo contendere' to a felony, a crime involving moral turpitude, or any other crime or offense that FRANCHISOR believes is injurious to the System(s), the Proprietary Marks or the goodwill associated therewith, or if FRANCHISOR has proof that FRANCHISEE has committed such a felony, crime or offense[.]" See section 9.0.2. The franchise agreements further provide that "[n]o cure period shall be available if FRANCHISEE is in default under any paragraph designated 9.0.1 through 9.0.4 above . . . or if FRANCHISEE intentionally under-reports Gross sales, falsifies financial data or otherwise commits an act of fraud with respect to FRANCHISEE's acquisition of this Franchise or its rights or obligations under this Agreement[.]" See section 9.1.4.

Defendants allege that in February 2006 Dunkin informed them that it wanted to re-acquire some of defendants' shops, but defendants did not agree to sell or transfer their franchises back to Dunkin. In June 2006, Dunkin commenced an audit of

defendants' franchises as provided for in the franchise agreements.

On September 24, 2007, plaintiffs sent defendants a notice of default and termination of the franchise agreements on the grounds that defendants violated the agreements by not accurately reporting employee wages on an IRS Form W-2 and by making an unauthorized transfer of their interest in the franchises. The notice provided that the termination was effective immediately and that the defaults were noncurable under the agreements. In addition, the notice stated that since a default under the franchise agreements was a breach of the SDA, plaintiffs also terminated the SDA effective immediately.

Plaintiffs brought this action to enforce the termination of the franchise agreements alleging breach of contract and trademark infringement. In answering the complaint, defendants asserted counterclaims alleging breach of contract and breach of the implied covenant of good faith and fair dealing.

## DISCUSSION

Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, a party is permitted to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense" and, upon a showing of "good cause," to have a court "order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1). Rule 26(b)(1) still provides for broad discovery despite the 2000

amendments which were designed to "focus [discovery] on the actual claims and defenses involved in the action." Fed. R. Civ. P. 26(b)(1) Advisory Committee Notes to 2000 Amendments. "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). "'Relevance' under Rule 26 'has been broadly construed to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any issue that is or may be in the case.'" Convermat Corp. v. St. Paul Fire & Marine Ins. Co., No. CV 06-1045, 2007 WL 2743696, at *1 (E.D.N.Y. Sept. 18, 2007) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)).

Defendants contend the documents they seek are relevant to their counterclaims for Dunkin's breach of the implied covenant of good faith and fair dealing by terminating the franchise agreements and refusing defendants' proposals to open new stores in bad faith and for pretextual reasons. Defendants claim that plaintiffs relied on manufactured reasons for declaring defendants in default of the frachise agreements in order to profit from the terminations of the franchises which cost the defendants hundreds of thousands of dollars to buy and develop. Defendants seek documents pertaining to plaintiffs' approval of store expansions where an existing franchisee was operating below a certain performance level and Dunkin's policies and practices

regarding franchise terminations.  In opposition to the motion to compel, plaintiffs argue that their motives for terminating the agreements and rejecting defendants' proposed store expansion are irrelevant because the agreements expressly afforded them the discretion to terminate the franchises and reject new stores.

Under Massachusetts law, a covenant of good faith and fair dealing is implied in every contract.[1]  See UNO Restaurants, Inc. v. Boston Kenmore Realty Corp., 805 N.E.2d 957 (Mass. 2004); Anthony's Pier Four, Inc. v. HBC Assocs., 583 N.E.2d 806, 820 (Mass. 1991).  "The implied covenant of good faith and fair dealing provides 'that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract . . . .'"  Anthony's Pier Four, 583 N.E.2d at 820 (quoting Drucker v. Roland Wm. Jutras Assocs., 348 N.E.2d 763 (Mass. 1976)).  "[T]he purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance."  UNO Restaurants, 805 N.E.2d at 964.

---

[1] The parties agree that Massachusetts law applies to the claims and counterclaims asserted in this case.  As this Court noted at the hearing on May 29, 2009, the franchise agreements and the SDA provide for the application of Massachusetts law. See section 11.3 of franchise agreements ("the resolution of all disputes between the parties bound hereunder, whether in tort and regardless of the place of injury or the place of the alleged wrongdoing or whether arising out of or relating to the parties' contractual relationship, shall be governed by the law of the Commonwealth of Massachusetts without regard to choice of law principles").

Under Massachusetts law, a party may breach the implied covenant of good faith and fair dealing without breaching any express terms of the contract.[2] See Anthony's Pier Four, 583 N.E.2d at 473 (exercising discretionary right under agreement as a pretext violated implied covenant); Canha v. LaRoche, No. CA 955110, 1996 WL 1186959, at *5 (Mass. Super. Ct. Aug. 12, 1996) (denying franchisor's motion to dismiss franchisee's claim for breach of implied covenant where "there was no breach of the express terms of the agreement"); accord Carvel Corp. v. Diversified Mgmt. Group, Inc., 930 F.2d 228 F.2d 228, 230-31 (2d Cir. 1991) (under New York law, evidence of Carvel's bad faith entitled sub-franchisor to jury instruction on breach of covenant of good faith even though Carvel had considerable discretion under distributorship agreement). "Otherwise, the implied covenant would be a mere redundancy." Speakman v. Allmerica Fin. Life Ins., 367 F. Supp. 2d 122, 132-33 (D. Mass. 2005). Thus, notwithstanding an express contractual right to terminate, including the termination of a franchise agreement, "under some circumstances a party to a contract is not free to terminate it

---

[2] Some of the cases cited by plaintiffs apply the common law of other states where an action for breach of the implied covenant of good faith and fair dealing cannot be maintained in the absence of the breach of an express contract provision. See, e.g., Burger King Corp. v. Weaver, 169 F.3d 1310, 1316 (11th Cir. 1999) (Florida law); USX Corp. v. Prime Leasing Inc., 988 F.2d 433, 438 (3d Cir. 1993) (Pennsylvania law); Continental Bank, N.A. v. Everett, 964 F.2d 701, 705 (7th Cir. 1992) (Illinois law).

according to its terms."[3] Zapatha v. Dairy Mart, Inc., 408 N.E.2d 1370, 1379 (Mass. 1980); see Fortune v. Nat'l Cash Register Co., 364 N.E.2d 1251, 1255-56 (Mass. 1977) (termination of employee according to express terms of contract violated implied covenant of good faith); Cherick Distribs., Inc. v. Polar Corp., 669 N.E.2d 218, 220 (Mass. App. Ct. 1996) (pretextual termination of distributorship agreement could constitute breach of implied covenant); Patriot Plastics & Supply, Inc. v. Polymer Corp., No. 93-5366, 1995 WL 809500, at *3 (Mass. Super. Ct. Jan. 20, 1995) (denying defendant's summary judgment motion given plaintiff's allegations of bad faith in termination of distributorship agreement); Snyder Computer Sys. v. Whistler Corp., No. 927147, 1993 WL 818583, at *3-*4 (Mass. Super. Ct. Nov. 3, 1993) (plaintiff stated valid claim for breach of implied convenant in terminating distributorship agreement). Even if plaintiffs had objectively reasonable grounds for terminating the franchise agreements, whether plaintiffs had an ulterior motive for terminating the agreements may be relevant to defendants' counterclaims. See Mercedes Benz U.S.A. LLC v. Coast Automotive Group, Ltd., No. 99-3121, 2006 WL 2830962, at *8-*9 (D.N.J. Sept. 29, 2006) (applying New Jersey law). The defendants could have

---

[3] While Dunkin correctly points out that franchisees often bring claims for breach of the implied covenant, courts have recognized that "the franchise relationship provides ample opportunity for a large corporate franchisor to take unfair advantage of a small franchisee who is dependent on the frachisor for its business." Piantes v. Pepperidge Farm, Inc., 875 F. Supp. 929, 938 (D. Mass. 1995).

fairly expected that Dunkin would exercise its rights to terminate and to reject new stores in good faith, rather than for the purpose of profiting from a transfer of ownership or favoring other franchisees. If the defendants can present evidence that the plaintiffs exercised their rights under the agreements in bad faith, the plaintiffs may be liable for breach of the implied covenant. See Dunkin' Donuts Inc. v. N.A.S.T., Inc., 428 F. Supp. 2d 761, 775 (N.D. Ill. 2005) (requiring "some ingredient of bad faith such as 'deceit' or 'pretextual or coercive' behavior or 'dishonest purpose, conscious doing of wrong, or breach of duty through motive of self-interest or ill-will'") (internal citations omitted); Christensen v. Kingston School Committee, 360 F. Supp. 2d 212, 226-27 (D. Mass. 2005) (plaintiff did not allege "bad faith," "improper motive" or "pretextual" behavior); Dunkin' Donuts v. Gav-Stra Donuts, Inc., 139 F. Supp. 147, 156 (D. Mass. 2001) (no evidence of "fraud, deceit or misrepresentation"); Dunkin' Donuts Inc. v. Panagakos, 5 F. Supp. 2d 57, 63-64 (D. Mass. 1998) (same); Piantes, 875 F. Supp. 929, 938-40 (no evidence of "bad faith"). Since the issue of defendants' default under the franchise agreements is in dispute, unlike many of the cases cited by plaintiffs, defendants are entitled to discovery in support of their counterclaims that plaintiffs acted with improper ulterior motives. See Dunkin' Donuts Inc. v. Mary's Donuts, Inc., 206 F.R.D. 518, 521 (S.D. Fla. 2002) (granting franchisee's motion to compel discovery in support of

counterclaim that Dunkin acted in bad faith in terminating franchise agreements).

Accordingly, I find that the information sought in the disputed discovery requests relating to defendants' counterclaims is largely relevant and discoverable.  The Court has considered plaintiffs' claims of undue burden and has narrowed defendants' requests as set forth below.  Insofar as plaintiffs intend to use any documents in support of their claims or defenses which need not be produced given the Court's narrowing of defendants' requests, plaintiffs must produce such documents or they will be precluded from using them.

Document requests 98-99 seek documents relating to whether Dunkin approved other franchisees to open new stores when they had an "ROR" rating of less than 80 percent.  Such information may yield evidence of Dunkin's alleged bad faith by showing that the reasons for refusing to approve defendants' proposals to open new stores were pretextual.  However, the requests are broad as formulated and shall be limited to proposals to open new stores by existing franchisees (or any entity or person directly related to existing franchisees) within the geographic area discussed in this Court's May 29, 2009 order from the time defendants' requests for approval were denied until three years thereafter.

Document request 105 seeks all documents that relate to Dunkin's "refranchising budget."  This request is stricken as

vague and overbroad.  Although defendants provided an additional explanation for the information they seek in their motion to compel, the request must be reformulated to request the specific information sought.

Document request 135 seeks "Franchise Operations and other manuals, Standard License Agreement/Franchise Agreement and Uniform Franchise Offering Circular."  Dunkin has agreed to produce 18 manuals and the parties shall confer on the manuals defendants seek and the allocation of copying costs.

Interrogatory 17 requests an explanation as to which of defendants' 1099 payments Dunkin alleges were improper and why.  The latter information is better addressed in a Rule 30(b)(6) deposition rather than an interrogatory.  However, plaintiffs must identify the 1099 forms that they contend were improper.

Finally, the parties have been unable to agree on the appropriate scope of Dunkin's search for emails relevant to the claims and defenses in this case.  Rule 26(f) requires the parties to formulate a discovery plan which includes "any issues about disclosure or discovery of electronically stored information." Fed. R. Civ. P. 26(f).  In addition, the Sedona Conference Cooperation Proclamation recommends that parties cooperate to resolve discovery disputes in order to reduce the rising costs associated with such disputes.  See SEC v. Collins & Aikman Corp., 256 F.R.D. 403, 414-15 (S.D.N.Y. 2009) (quoting The Sedona Conference Cooperation Proclamation).  Accordingly, the

parties are directed to meet and confer on developing a workable search protocol to obtain the information sought by the defendants in light of what was discussed at the motion hearing. Defendants' proposed search can be narrowed temporally and the scope of the search terms sought tailored to each employee, since some employees may have knowledge of only issues relevant to one set of counterclaims but not the other. The defendants must provide Dunkin with a list of the employees or former employees whose emails they want searched and the specific search terms to be used for each individual depending on whether they were likely to be involved with issues relating to the termination of the franchise agreement or the performance of the store development agreement.

## CONCLUSION

For the foregoing reasons, defendants' motions to compel are granted in part and denied in part.

**SO ORDERED.**

Dated: Brooklyn, New York
June 19, 2009

/s/
MARILYN D. GO
UNITED STATES MAGISTRATE JUDGE